Docket No. 87028–Agenda 34–September 1999.

DONALD FRASER, Appellant, v. UNIVERSITIES RESEARCH

 ASSOCIATION, INC., Appellee.

Opinion filed December 2, 1999.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Donald Fraser, filed a complaint in the circuit court of Du Page County, alleging that defendant, Universities Research Association, Inc., negligently allowed a defective condition to exist on a bicycle path on its property and, as a result of that condition, plaintiff suffered injuries while riding his bike on the path. The circuit court found the immunity of the Recreational Use of Land and Water Areas Act (Recreational Use Act) (745 ILCS 65/1 
et seq. 
(West 1994)) applicable and granted summary judgment in favor of defendant. The plaintiff appealed. The appellate court affirmed (301 Ill. App. 3d 511), and this court granted leave to appeal (177 Ill. 2d R. 315). For the reasons expressed below, we affirm the judgment of the appellate court.

In his complaint, plaintiff alleged that the defendant corporation occupied, maintained, possessed and operated the property commonly known as Fermi National Accelerator Laboratory in Batavia, Illinois. On May 20, 1995, the date of plaintiff’s alleged injury, defendant maintained, and made available for use by the general public, certain bicycle paths on the property. According to plaintiff, he was riding his bicycle on one of those paths when he encountered a series of depressions in the pavement. He rode over the depressions, fell, and was injured. Plaintiff alleged that defendant owed him a duty of “ordinary care *** pursuant to the Premises Liability Act, 740 ILCS 130/1.” He claimed defendant’s “negligent acts or omissions” were the cause of his injuries. Specifically, plaintiff alleged that the defendant was negligent in: (1) allowing the depressions to exist; (2) failing to warn of their severity; (3) failing to repair the depressions; (4) failing to inspect so as to locate such defects; and (5) failing to employ a reasonable system of inspection.

Defendant filed, 
inter alia
, a motion for summary judgment, arguing that the Recreational Use Act applied to the facts alleged, and defendant therefore owed no duty of care to plaintiff with respect to plaintiff’s use of the bicycle paths. The motion was accompanied by the affidavit of an attorney for defendant, which stated:

“The primary purpose of the land and facilities that comprise Fermilab is the furtherance of the work performed under the auspices of [the] U.S. Department of Energy by the Fermi National Accelerator Laboratory. There are bicycle paths present upon the land that comprises Fermilab that are available for use by the general public. [Defendant] permits these bicycle paths to be used recreationally by members of the general public on a casual basis. The land is not open twenty-four hours a day for these purposes. No charge is made for the use of the bicycle paths.”

Defendant also attached to its motion a transcript of plaintiff’s deposition testimony wherein plaintiff admitted, at the time of the accident, he had been on defendant’s bicycle paths solely for recreational purposes.

Plaintiff filed a response, arguing the applicability of the Campground Licensing and Recreational Area Act (Campground Licensing Act) (210 ILCS 95/2 
et seq. 
(West 1994)), which plaintiff contended precluded defendant from relying on the immunity of the Recreational Use Act. Plaintiff attached to his response the aforementioned affidavit of defendant’s attorney, his own affidavit, describing the character of the bike paths on the defendant’s property and the entrance signs indicating the general public was welcome to use the paths, and photographic exhibits depicting the bike paths and signs.

At the hearing on the motion, plaintiff argued that the legislature had established two mutually exclusive statutory classes of property when it enacted the Recreational Use Act and the Campground Licensing Act: one in which an owner of land allows others to use it for recreational purposes, but only on a “casual basis,” and another for areas specifically set aside by the owner for recreational purposes. Citing the “casual basis test,” formulated in 
Miller v. United States
, 442 F. Supp. 555 (N.D. Ill. 1976), 
aff’d
, 597 F.2d 614 (7th Cir. 1979), and thereafter applied, more or less, uniformly for several years in both federal and Illinois appellate cases, the plaintiff argued that Fermilab’s bicycle paths were used primarily as “recreational areas,” as defined in the Campground Licensing Act, and the immunity of the Recreational Use Act was therefore inapplicable to them. Defendant argued that the terms and immunity of the Recreational Use Act 
did 
apply to the facts as stated, in that defendant had permitted persons, such as plaintiff, to use its property for recreational purposes without charge. Defendant’s counsel cited language of the Campground Licensing Act (210 ILCS 95/25 (West 1994)) which he argued refers to the Recreational Use Act and specifically states that the Campground Licensing Act imposes no “additional duty of care” on landowners otherwise subject to the terms of the Recreational Use Act. The circuit court agreed and granted summary judgment in favor of the defendant.

In the ensuing appeal, the appellate court affirmed the judgment of the circuit court. The appellate court opinion extensively cited 
Hoye v. Illinois Power Co.
, 269 Ill. App. 3d 597 (1995), and like 
Hoye
, rejected the casual basis test, finding that “the [Campground Licensing and ] Recreational Area Act does not restrict the applicability of the Recreational Use Act.” 301 Ill. App. 3d at 518.

We agree. The facts before the circuit court engender no conflict in the application of the Recreational Use Act and the Campground Licensing Act. We begin our analysis by examining the relevant provisions of the two acts, past and present.

Enacted in 1965, the stated purpose of the Recreational Use Act was, and is, “to encourage owners of land to make land and water areas available to the public for recreational or conservation purposes by limiting their liability toward persons entering thereon for such purposes.” 745 ILCS 65/1 (West 1994). To that end, the legislature has provided:

“Except as specifically recognized by or provided in Section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational or conservation purposes, or to give any warning of a natural or artificial dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.” 745 ILCS 65/3 (West 1994).

Section 4 of the Recreational Use Act (745 ILCS 65/4 (West 1994)) spells out the immunity in greater detail:

“Except as specifically recognized by or provided in Section 6 of this Act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational or conservation purposes does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such person or any other person who enters upon the land.

(d) Assume responsibility for or incur liability for any injury to such person or property caused by any natural or artificial condition, structure or personal property on the premises.”

Section 6 of the Act, referenced in the preceding two sections, states that the Act’s limitation of liability does not extend to a “willful or wanton failure to guard or warn against a dangerous condition, use, structure, or activity.” 745 ILCS 65/6(a) (West 1994). Nor does limited liability extend to “injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof .” 745 ILCS 65/6(b) (West 1994).

As originally enacted, and until December 8, 1987, the Recreational Use Act defined “land” as follows:

“(a) ‘Land’ means land located outside the corporate limits of a city, village or incorporated town and not subdivided into blocks and lots and includes roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.” Ill. Rev. Stat. 1985, ch. 70, par. 32(a).

The Campground Licensing Act was enacted in 1972. Its stated purpose is to “protect, promote, and preserve the public health, safety and general welfare by providing for the establishment and enforcement of minimum standards for safety, cleanliness and general sanitation for all recreational areas and campgrounds now in existence or hereafter constructed or developed and to provide for inspection of all such facilities and the licensing of campgrounds.” 210 ILCS 95/3 (West 1994).

The Campground Licensing Act applies to both “campgrounds” and “recreational areas,” defining the latter as “any area of land which is designed, constructed, operated or maintained either free of charge or for revenue purposes for recreational activities.” 210 ILCS 95/2(a) (West 1994). The Act provides that “[a]ny person who constructs, operates, maintains or owns a recreational area shall comply with the requirements of this Act and the rules and regulations promulgated hereunder by the Department [of Public Health], and all recreational areas that are campgrounds shall be licensed in accordance with this Act.” 210 ILCS 95/4 (West 1994).

Of the provisions which follow, many apply exclusively to campgrounds and their licensing. See 210 ILCS 95/5, 6, 7, 10, 14, 15 (West 1994). The cited sections apparently do not apply to “recreational areas,” which are not required to be licensed under the Act. Even owner/operator representation on the Campground Licensing and Recreational Area Advisory Council is limited to three seats for operators of “campgrounds.” There is no place on the council for owners of “recreational areas.” 210 ILCS 95/22 (West 1994).

While the focus of the Campground Licensing Act is clearly campground regulation, it also applies specifically to recreational areas. Section 21(a) of the Act empowers the Department to “promulgate such rules and regulations as may be necessary for the proper enforcement of [the] Act, to protect the health and safety of the public using such recreational areas and campgrounds.” 210 ILCS 95/21(a) (West 1994). Those regulations “include, but are not limited to, standards relating to water supply, sewage and solid waste disposal, food service sanitation, design of buildings, rodent and insect control, water and swimming hazards, first aid, communicable disease control, safety, cleanliness and sanitation.” 210 ILCS 95/21(a) (West 1994). To ensure compliance with the Act and departmental regulations issued pursuant thereto, the Act authorizes and directs the Department to conduct inspections and investigations (210 ILCS 95/8, 9 (West 1994)) and requires owners, licensees and occupants of recreational areas and campgrounds to provide access to the Department for the purpose of inspection. 210 ILCS 95/11 (West 1994). The Act provides that the Department must give written notice of any alleged violation to the owner, operator, licensee or permit holder, specifying the reason for issuance of the notice, allowing a reasonable time “for the performance of any act it requires,” and containing an outline of remedial action which will effect compliance with the provisions of the Act and the rules and regulations issued thereunder. 210 ILCS 95/13 (West 1994). The scheme of notice, allowing an opportunity for remediation, is evidently meant as a precursor to the more drastic measures of suspension or revocation of a permit or license (210 ILCS 95/14 (West 1994)), although it is not 
specifically 
limited in its application to permit holders or licensees. Finally, the Act provides for criminal penalties, stating, “Any person who violates this Act or any rule or regulation adopted by the Department, or who violates any determination or order of the Department under this Act shall be guilty of a Class B misdemeanor.” 210 ILCS 95/24 (West 1994).

Soon after the enactment of what was then the Recreational Area Licensing Act, a federal district court perceived a need to reconcile that Act with the Recreational Use Act, and attempted to do so by reading the two statutes  
in pari materia
. The 
Miller
 court concluded:

“[T]he Recreational Use of Land and Water Areas Act is intended for those who permit open lands to be used recreationally on a casual basis. But those who hold their property out to the public for recreational purposes, and maintain their property for recreational use by the number of persons that are prerequisite to the application of the Recreational Area Licensing Act [now the Campground Licensing and Recreational Area Act], they are subject to the provisions of the latter and not entitled to the asserted protection of the former.” 
Miller
, 442 F. Supp. at 561.

The district court’s decision was, as previously noted, affirmed by the United States Court of Appeals (
Miller v. United States
, 597 F.2d 614 (7th Cir. 1979)) and thereafter followed or cited with approval in various decisions both federal and state.

In 1987, amendments to the Recreational Use Act and the Campground Licensing Act effected changes which indicate both a legislative intent to broaden the category of land qualifying for the immunity of the Recreational Use Act and an intent to limit the purview of the Campground Licensing Act. The amendment to the Recreational Use Act expanded the Act’s definition of “land,” removing language which had limited the Act’s application to “land located outside the corporate limits of a city, village or incorporated town and not subdivided into blocks and lots.” Ill. Rev. Stat. 1985, ch. 70, par. 32(a). At the same time, the legislature limited the reach of the Campground Licensing Act by specifically providing, “Nothing in this Act shall be construed to impose any additional duty of care on an owner of land who either directly or indirectly invites or permits without charge, as defined in the Recreational Use of Land and Water Areas Act, any person to use such property for recreational purposes.” Ill. Rev. Stat. 1987, ch. 111½, par. 785. These two amendments should have been the death knell of the already dubious casual basis test, which had no statutory basis when it was formulated.

The Recreational Use Act has always applied to land opened for recreational purposes without charge. The Act never expressly, or implicitly, limited the immunity it provided to landowners who allowed recreational activities on their property on only a casual basis. To deny limited immunity to one who offers his land to the public for recreational purposes without reservation, but to grant it to an owner who begrudgingly allows only limited use of his property, seems to us absurd and wholly at odds with the purpose of the Act: to encourage owners of land to make it available to the public for recreation.

An example may illustrate the point. If an owner of land allows a parcel of his property to be used exclusively as a baseball diamond, for the benefit of his community, or if he has opened his private arboretum for school children to tour, 
he 
would not receive the immunity of the Act under the casual basis test, precisely because he holds the property out to the public for recreational purposes. However, the farmer who allows the occasional hunter a walk through his field 
does 
receive the benefit of the immunity. Who has done more to further the purpose of the Act?

It has been argued that there is no need to offer immunity to those who, without charge, have already opened their property to the public for recreational purposes. No incentive is necessary. Rather, it is the reluctant landowner that we need to encourage with immunity. This argument suggests we should treat the good samaritan less favorably than the miser. The language of the statute does not require that result. Moreover, it may be simplistic to blithely suppose that the charitable owner of land will 
keep 
his land open to the public after he recognizes the disparate treatment accorded him.

The casual basis test was never necessary to reconcile the two acts in question. The Campground Licensing Act has its own set of rules and regulations, and its own procedure for enforcement, with appropriate penalties if warranted. Moreover, lest there be any doubt, the Campground Licensing Act, in the second sentence of section 25, now specifically states that it imposes no additional duty on those who could otherwise claim immunity under the Recreational Use Act. 210 ILCS 95/25 (West 1994). With the passage of the two 1987 amendments, it is clear that the legislature meant to expand and confirm the reach of the Recreational Use Act.

Summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 
Majca v. Beekil
, 183 Ill. 2d 407, 416 (1998). As the appellate court determined, “whether the recreational use of land [in this case] was on a casual basis is not a question of material fact in determining whether the Recreational Use Act and its immunities apply.” 301 Ill. App. 3d at 518.

The limited immunity of the Recreational Use Act applies to the facts alleged in plaintiff’s complaint. Plaintiff has not alleged willful and wanton conduct which would take his case outside the purview of the Act. Thus, the judgment of the appellate court is affirmed.

Affirmed.
 

JUSTICE RATHJE took no part in the consideration or decision of this case.