Joshua CACIA, a Minor, by and through his Mother and Next Friend, Paula RANDOLPH and Joseph C. Jerrick, Plaintiffs–Appellants,

v.

NORFOLK & WESTERN RAILWAY COMPANY, Defendant–Appellee.

Nos. 01–2966, 01–2967.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 2002.

Decided May 17, 2002.

Laird M. Ozmon (argued), Joliet, IL, for Plaintiffs–Appellants.

Raymond H. Groble, III (argued), Bernard Roccanova, Daley & Mohan, Chicago, IL, for Defendant–Appellee.

Before FLAUM, Chief Judge, and COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge.

Joshua Cacia and Joseph Jerrick each brought personal injury actions in the circuit court of Will County, Illinois, alleging injuries incurred in separate incidents in the month of July 1998, which occurred as they drove their off-road vehicles along an abandoned railroad track right-of-way near Essex, Illinois, owned by the defendant, Norfolk & Western Railway Company. The plaintiffs sustained their injuries when they drove their vehicles into a creek bed where a bridge had been removed at the request of the defendant railroad. The defendant removed the cases to the Central District of Illinois, invoking the federal court's diversity jurisdiction. After consolidation of their cases for summary judgment purposes, the trial court granted judgment in favor of the defendant, ruling that the plaintiffs had failed to establish that Norfolk owed any duty of ordinary care to the plaintiffs and furthermore that the plaintiffs had failed to demonstrate that the railroad's conduct was willful and wanton. We affirm.

## I. Factual Background

In October 1990, Norfolk entered into a salvage contract with The Tie Yard of

Omaha, Inc., a company specializing in the removal of salvage material. Under the terms of the contract Tie Yard agreed both to remove and dispose of the railroad tracks from abandoned railroad lines in various locations throughout Central Illinois, including the bridge in question located in the area of Essex, Illinois, that spanned Horse Creek. Tie Yard further agreed to purchase any salvageable material from those tracks. As a result of the removal of the bridge at Horse Creek, a "pit" 31 feet across, 17 feet wide, and 11 feet deep was created. Pursuant to the contract, Norfolk required that the Tie Yard "barricade the right of way at the backwalls of each bridge removed by placing a mound of dirt, ballast or other suitable material at least four feet high completely across the roadbed ... with side slopes steep enough to prevent their use by trespassers as ramps for jumping motor bikes or other such vehicles." Further, it was Norfolk's customary practice to send an employee from its maintenance of way department to inspect the area after the bridge had been removed and the barricade constructed in order to ensure that the barricade erected was satisfactory. Plaintiffs failed to present any evidence to suggest that Norfolk had neglected to make an inspection of the barricade at the accident site. On the other hand, Norfolk did not continue to make inspections of the barricade for maintenance purposes after it was initially constructed.[1] Even though Norfolk never permitted the public to enter onto or use the abandoned rail beds on its right of way, either before and after the track had been removed, without specific authorization, it had not posted any no-trespassing signs.

Norfolk was well aware of the fact that barricades might occasionally be damaged by vandalism, but in the factual situation presented to us nothing had been reported to any Norfolk employee concerning the barricade at the accident site and thus they had no specific knowledge that any vandalism had rendered the barricades at the site of the accidents ineffective. In fact, the only complaint Norfolk received relating to the stretch of abandoned track near Essex was a report of March 1998 notifying the company that appliances and tires had been dumped on Norfolk's rail bed about one-half mile from the accident location. In March 1998, a few months before the occurrence of the accidents at issue, Russell Josvai, an environmental property agent for Norfolk, investigated a complaint that trash had been dumped along Norfolk's abandoned rail bed, approximately one-half mile from the accident site.[2] Josvai inspected the trash in the designated railroad area, but never did "go the extra mile" by inspecting the one-half mile of the tracks that led to the bridge removal site. At the time of the inspection, Josvai did not observe any evidence of motorcycle or ATV tracks in the snow, which according to Josvai was present at the site when he made his March 1998 inspection. At the conclusion of his inspection, Josvai spoke with Essex's mayor, who promised to clean up the trash and "police" the area with the construction of a

---

1. Plaintiffs point to no statute, regulation, or case law imposing a duty on the railroad, village, county, or state to continue to inspect periodically the aforementioned abandoned railway and barricaded area.

2. Josvai's recollection as to the exact date he received the complaints and inspected the area is unclear from his deposition testimony.

At one point he testified that his inspection occurred "about two years" prior to his March 2000 deposition. At another, he suggests that it may have occurred in the fall or winter of 1998 or 1999. Because we view the facts in the light most favorable to the non-moving party, we assume for purposes of this appeal that Josvai conducted his inspection in March 1998.

barrier or gate using a locked steel cable that would run across the abandoned rail bed and bar any trespassers who might have thoughts of driving their vehicles along it.

On July 19, 1998, the day of the accident, Joseph Cacia was driving a Honda CR 125 off-road motocross bike along Norfolk's abandoned rail bed (where Tie Yard had removed the tracks) with his friend, Greg Henke, on their way to Shannon Shores, Illinois, (a water skiing lake) and Monster Lake. On their return, they followed the abandoned railroad right-of-way referred to and rode single-file with Henke following some distance behind Cacia. At some point along the ride, Henke could no longer see Cacia and later found him in the creek bed at the site of the removed bridge that previously had covered Horse Creek. No warning signs were posted to alert Cacia and Henke that the bridge had been removed.

Six days later, on July 25, Jerrick, accompanied by his friend Mark Chipman, drove their all-terrain vehicles along Norfolk's abandoned railroad right-of-way, including the site where the tracks had been removed. During the early part of their ride, Jerrick and Chipman observed a stretch of the rail bed that traversed a creek where a bridge had been removed. About two and one-half hours later, Jerrick and Chipman were returning along the same path, near the same creek. Jerrick was following Chipman, and Chipman's all-terrain vehicle was stirring up a cloud of dust. Chipman was able to observe in sufficient time that the bridge had been removed and swerved to avoid it. Jerrick, however, could not see that the bridge was missing because of the dust churned up by Chipman's ATV. When Jerrick did notice at the last instant that the bridge was no longer there, he was unable to avoid losing control of his vehicle as he came upon the bridgeless area, resulting in his being catapulted off the trail into space, and landing on the creek bed below.

The plaintiffs sued and filed individual complaints in state court against Norfolk, alleging negligence and willful and wanton conduct under Illinois tort law. Norfolk removed the cases pursuant to 28 U.S.C. § 1441(a) to the United States District Court for the Northern District of Illinois, invoking the federal court's diversity jurisdiction.[3]The cases were consolidated for purposes of ruling on Norfolk's summary judgment motion and on October 17, 2000, the trial court granted summary judgment in favor of Norfolk on all counts of each of the plaintiff's claims, denied plaintiffs' motion for leave to file a second amended complaint containing claims for negligence, and also granted Norfolk's motion to bar the testimony of plaintiffs' expert witness. The trial court ruled that plaintiffs' negligence claims failed under the Illinois's Recreational Use of Land and Water Areas Act, 745 ILCS 65/1 (Recreational Use Act), which serves to immunize landowners whose land is being used for recreational purposes from all but wanton and willful conduct. The trial court went on to rule that the facts, when considered in the light most favorable to the plaintiffs, failed to rise to the level of establishing that Norfolk's conduct met the Illinois standard for willful and wanton conduct. In support of its ruling, the trial court found that the company had no notice of any accident at any time or safety complaint regarding the removed bridge and also that its contract

---

**3.** Plaintiffs are both Illinois citizens. Norfolk is a Virginia corporation whose principal place of business is also Virginia. The amount in controversy in each claim exceeds $75,000. The Tie Yard of Omaha, a Nebraska corporation with its principal place of business in Nebraska, was named as a second defendant *after* defendant-Norfolk removed the case.

with Tie Yard had obligated the salvage firm to erect the necessary barricades on either side of the removed bridge. The contract between Tie Yard and Norfolk specified that the barricades erected were required to have sufficiently steep sides of at least four feet high and of sufficient width to span the entirety of the rail bed in order that the barricade would prevent trespassers both from inadvertently falling into the creek bed and furthermore to bar and prevent anyone from using the barricade as a ramp to propel a jump across the pit created by the removal of the bridge. The trial court ruled that the plaintiffs had failed to establish the defendant had consciously disregarded any known risk. Finally, the trial court denied the plaintiffs leave to amend their complaint to reformulate their negligence claims after finding that these claims were barred by Illinois's Recreational Use Act.

After the trial court granted summary judgment in favor of Norfolk, the plaintiffs attempted to create a final, appealable order by voluntarily dismissing their claims against Tie Yard. We rejected this attempt to confer appellate jurisdiction, and the plaintiffs later secured from the trial court a Rule 54(b) certification of the October 17, 2000, order granting summary judgment to Norfolk. The plaintiffs-appellants now appeal the trial court's decision to grant summary judgment in favor of Norfolk as well as its denial of granting leave to file a second amended complaint.

## II. Issues

On appeal, the plaintiffs raise two arguments that the trial court erred in granting summary judgment. The plaintiffs initially argue that the trial court committed error in ruling that the Recreational Use Act immunized Norfolk from plaintiffs' negligence claims and thus summary judgment was not proper. Second, the plaintiffs claim that the trial judge's grant of summary judgment was improper because

she erred in concluding that Norfolk's actions were not wanton and willful. Finally, the plaintiffs also contend that the trial court abused its discretion in denying them leave to file a second amended complaint.

## III. Analysis

Illinois's Recreational Use of Land and Water Areas Act, 745 ILCS 65/1 *et seq.*, provides limited immunity to owners of land used for recreational activity. Specifically, the Act provides:

> Except as specifically recognized by or provided in Section 6 of this Act, an owner of land owes no duty of care to keep the premises safe for entry or use by any person for recreational or conservation purposes, or to give any warning of a natural or artificial dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

745 ILCS 65/3.

■ Section 6 of the Act, referenced in the aforementioned text, states that the Act's limitation of liability does not extend to a "willful or wanton failure to guard or warn against a dangerous condition, use, structure, or activity." 745 ILCS 65/6(a). Thus, in those instances where the Recreational Use Act applies, a plaintiff may not merely allege that the owner acted negligently, but must also establish that the owner acted willfully and wantonly. *See, e.g., Fraser v. Universities Research Assoc.,* 188 Ill.2d 444, 242 Ill.Dec. 612, 721 N.E.2d 1143, 1149 (Ill.1999).

The plaintiffs argue that the Recreational Use Act is not applicable to the factual situation presented here because the defendant-owner never made its land available for the public to use for recreational purposes. Plaintiffs point out that the purpose of the Recreational Use Act is to "encourage owners of land to make land

and water areas available to the public for recreational or conservation purposes by limiting their liability toward persons entering thereon for such purposes." 745 ILCS 65/1. Thus, plaintiffs contend that the intent of the Act is to immunize landowners who allow their property to be used by the general population, and *not* to immunize landowners who prohibit such use (as did Norfolk in this case).

■■■ In short, plaintiffs ask us to somehow read into the statute a requirement that the defendant-landowner actually have opened the land, at least on a limited basis, to the public. But the statute contains no such language. Further, the interpretation of the statute as proposed by the plaintiffs has been previously rejected by Illinois courts. *See Turgeon v. Commonwealth Edison Co.*, 258 Ill.App.3d 234, 197 Ill.Dec. 194, 630 N.E.2d 1318 (Ill. App.Ct.1994); *Johnson v. Stryker Corp.*, 70 Ill.App.3d 717, 26 Ill.Dec. 931, 388 N.E.2d 932 (Ill.App.Ct.1979). Indeed, *Johnson* framed the issue, and answered in the affirmative, as follows: "Whether a landlord as defined in said act *who does not make his land available to the general public* for recreational purposes may seek the protection of the Recreational Use of Land and Water Areas Act...." *Johnson,* 26 Ill.Dec. 931, 388 N.E.2d at 932 (emphasis added). In answering that question, the court reasoned that while "[i]t is true that the purpose of the statute is to encourage landowners to open up their prop-

erty to members of the public[,][t]hat does not mean the legislature intended to limit the application of the statute only to the landowners who open their lands to all members of the public." *Id.* at 934. The court concluded that it was "more reasonable to believe that the legislature, being aware of the growth of the doctrine of attractive nuisance ... wished to protect landowners whose property is used gratuitously, *with or without their permission*, for recreational purposes." *Id.* (emphasis added) (internal citations omitted). Therefore, the trial court correctly determined that the Recreational Use Act immunized Norfolk from all but willful and wanton conduct and properly dismissed plaintiffs' negligence claims.

■■■ Because the Recreational Use Act is applicable, Norfolk can be held liable only if the plaintiffs establish that Norfolk's failure to inspect the bridge site, post warning signs, or build (or have others do so on its behalf) a structure that would serve to bar the public from trespassing on its land around the removed bridge was a "willful or wanton failure to guard or warn against a dangerous condition, use, structure, or activity." [4] A complaint for willful and wanton misconduct must establish that the defendant acted "in reckless disregard for the safety of others ... [and] allege facts establishing that the defendant failed, after knowledge of impending danger, to exercise ordinary care

---

4. Plaintiffs devote a substantial portion of their brief to a discussion of whether the missing bridge was an "open and obvious" condition. Plaintiffs, however, put the cart before the horse. The trial court relied on the Recreational Use Act, not the "open and obvious" doctrine to dismiss plaintiffs' claims, and so its decision does not rest at all upon the applicability of the doctrine. Further, in order for the "open and obvious" doctrine to be relevant, plaintiffs must initially establish that Norfolk owed them a duty of ordinary care because the "open and obvious" doctrine

operates to insulate landowners from liability arising from a duty of care owed to invitees. *Hastings v. Exline*, 326 Ill.App.3d 172, 260 Ill.Dec. 220, 760 N.E.2d 993, 995 (Ill.App.Ct. 2001). In this case, the plaintiffs were not invitees, but were trespassers, and Norfolk did not owe plaintiffs a duty of ordinary care, only a duty to refrain from willful and wanton conduct. *McKinnon v. Northeast Illinois Regional Commuter RR Corp.*, 263 Ill.App.3d 774, 200 Ill.Dec. 405, 635 N.E.2d 744, 746–47 (Ill.App.Ct.1994).

to prevent it or that defendant failed to discover the danger through recklessness or carelessness when it could have been discovered by ordinary care." *Spangenberg v. Verner*, 321 Ill.App.3d 429, 254 Ill.Dec. 319, 747 N.E.2d 359, 364 (Ill.App. Ct.2001). In other words, plaintiffs must demonstrate that the railroad acted with utter indifference to or conscious disregard for the safety of others on its property. *Conoway v. Hanover Park Dist.*, 277 Ill. App.3d 896, 214 Ill.Dec. 674, 661 N.E.2d 528, 532 (Ill.App.Ct.1996). A defendant is guilty of willful and wanton conduct when it "ignores known or plainly observable dangerous conditions, and does something that will naturally and probably result in injury to another." *Mostafa v. City of Hickory Hills*, 287 Ill.App.3d 160, 222 Ill. Dec. 513, 677 N.E.2d 1312, 1319 (Ill.App. Ct.1997). A defendant may be found to have engaged in willful and wanton conduct if it has been informed of a dangerous condition or was aware of the fact that others had been injured because of the condition, and failed to respond to or otherwise remedy the dangerous condition. *See Mostafa*, 222 Ill.Dec. 513, 677 N.E.2d at 1320; *Carter v. New Trier East High Sch.*, 272 Ill.App.3d 551, 208 Ill.Dec. 963, 650 N.E.2d 657, 661–62 (Ill.App.Ct.1995); *Winfrey v. Chicago Park Dist.*, 274 Ill. App.3d 939, 211 Ill.Dec. 46, 654 N.E.2d 508, 513 (Ill.App.Ct.1995).

Plaintiffs argue that the defendant's conduct falls well within the parameters of willful and wanton conduct outlined above. According to plaintiffs, Norfolk knew that *if* the accident site did not have a barricade it would pose a risk to those that used the site for recreational purposes. Plaintiffs further argue that Norfolk was aware that *occasionally* barricades at other sites had been vandalized and rendered ineffective. Plaintiffs contend that Norfolk's conduct (failure to act) exhibited a "conscious disregard of a known risk" not only because it failed to continue to inspect the barricade after its initial inspection, but also because it failed to place warning signs on the rail bed surrounding the area near the removed bridge.

Plaintiffs' reasoning, however, piles a mountain of speculation upon a foundation of quicksand. Plaintiffs speculate that because Norfolk was aware that barricades sometimes were damaged and rendered ineffective it thus had a concurrent obligation to regularly inspect the barricades and its failure to regularly inspect *this particular barricade* (despite the fact that not a single complaint or previous accident was ever reported in the seven years since the removal of the bridge) amounted to willful and wanton conduct. But plaintiffs fail to point to any evidence that would serve to establish that Norfolk was aware that destruction or vandalism of barricades *routinely* occurs on its abandoned rail beds or that barricades on its rail beds must be inspected on a regular basis in order that they might be maintained in a satisfactory condition and remain effective.

■ A defendant's conduct might conceivably be classified as willful and wanton when it fails to inspect a premises when it has reason to know that such an inspection is necessary or has a duty to do so as established by law or statute. *See Carter*, 208 Ill.Dec. 963, 650 N.E.2d at 662. In this case, plaintiffs point to not an iota of evidence that suggests that Norfolk had *any knowledge* that the barricade it had required Tie Yard to erect was damaged or demolished as a result of vandalism, and thus no longer adequate to prevent accidents such as those that occurred in this case. Furthermore the evidence is undisputed that Norfolk had no knowledge of any other complaints or accidents at the site of the removed bridge. Plaintiffs also argue that complaints regarding trash dumped on the rail bed near the bridge should have alerted Norfolk that its barri-

cade was no longer effective. But plaintiffs' argument is without merit for two reasons. First, Norfolk *did promptly respond to and investigate* the complaints and took steps to ensure that the accumulation of trash in the area along its abandoned rail bed was removed. Second, plaintiffs fail to explain why complaints regarding trash along a rail bed should have alerted Norfolk that a barricade, more than half a mile from the site referred to in the complaints on file, was defective. Furthermore, plaintiffs have failed even to point us to any evidence in the record that establishes that Norfolk was aware that trespassers were using the area for recreational purposes. Quite simply, the record is barren of even a scintilla of evidence that Norfolk had any notice that the safety measures it took after the bridge was removed were ineffective or even unreasonable.

Plaintiffs nonetheless point to deposition testimony of Norfolk employees that suggests that additional safety measures (such as installing warning signs, guard rails, and reflective lights) could have been taken to make the accident site more safe. This argument implies that Norfolk's lack of action in placing warning signs or guard rails rose to the level required to establish willful and wanton conduct because, according to plaintiffs, it could have taken additional steps that *might* have made the safety measures at the accident site more effective. Illinois case law does not require that a defendant take the most effective safety measures possible. *See Dinelli v. County of Lake*, 294 Ill.App.3d 876, 229 Ill.Dec. 284, 691 N.E.2d 394 (Ill.App.Ct. 1998). In other words, it is not sufficient for plaintiffs to demonstrate merely that *some persons* could find that Norfolk was negligent in failing to take additional steps to make its safety measures more effective. Instead, the plaintiffs are required to establish that Norfolk's omissions met the Illinois standards of willful and wanton

conduct, under which the trespassing plaintiffs must demonstrate that a *reasonable person* would have been aware that a failure to regularly inspect the bridge or post warning signs were necessary precautionary measures to ensure the safety of trespassers at the accident site. *See, e.g., Burlingame v. Chicago Park Dist.*, 293 Ill.App.3d 931, 228 Ill.Dec. 362, 689 N.E.2d 234, 237 (Ill.App.Ct.1997); *Pomaro v. Community Consol. Sch. Dist.* 21, 278 Ill. App.3d 266, 214 Ill.Dec. 872, 662 N.E.2d 438, 440 (Ill.App.Ct.1996).

In this instance, because Norfolk made *reasonable efforts* to ensure the safety of the accident site by contracting for the erection of a sufficient barricade to prevent trespassers from accessing the removed bridge area, it will be protected against a claim that it acted with willful and wanton disregard of a known risk. Plaintiffs have simply failed to offer any evidence to establish that Norfolk's decision to require the Tie Yard to construct an earthen barricade, which met Norfolk's specifications, at the former bridge site was not a reasonable measure to ensure the area's safety. Based on the record before us, we are of the opinion that the trial court ruling was proper in holding that Norfolk's actions did not rise to the level of willful and wanton conduct and properly granted summary judgment in favor of Norfolk.

Lastly, plaintiffs argue that the trial court erred in denying its motion for leave to file an amended pleading. Granting or denying a motion for leave to amend is a matter within the discretion of the trial court, and we review the denial of such a motion under the abuse of discretion standard. *Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir.1999). In this case, the trial court had previously permitted plaintiffs to amend their complaint once and found that the

plaintiffs' second amended complaint "suffers from the same defect as the first" because it attempted only to reformulate plaintiffs' negligence arguments. When an amendment will not cure the legal deficiencies of the original complaint, the trial court does not abuse its discretion by refusing to grant a second leave to amend. *Id.* As discussed above, plaintiffs' negligence claims are barred by the Recreational Use Act, and the trial court did not abuse its discretion in denying plaintiffs leave to amend their complaints.

AFFIRMED.