STEVEN FLOSI, Plaintiff-Appellant, v. BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF ROCK FALLS et al., Defendants-Appellees.

Third District No. 3—90—0757

Opinion filed October 4, 1991.—Rehearing denied November 18, 1991.

Heckenkamp, Simhauser & LaBarre, P.C., of Springfield (Duane D. Young, of counsel), for appellant.

Blodgett, Reese, Merritt & Albert, of Rock Falls, and Thomas F. McGuire & Associates, Ltd., of Long Grove (James L. Reese and Thomas F. McGuire, of counsel), for appellees.

JUSTICE HAASE delivered the opinion of the court:

The plaintiff, Steven Flosi, filed a complaint for administrative review in the circuit court of Whiteside County seeking to set aside the decision of the defendant, the Board of Fire & Police Commissioners of the City of Rock Falls (Board), which had ordered that Flosi be discharged from the police department. The circuit court affirmed the Board's decision. Flosi appeals. We reverse.

On November 12, 1987, the mayor of the City of Rock Falls, James Arduini, brought a complaint against Flosi alleging that he repeatedly and for no valid law enforcement purpose had contact with Patti Doyle, a person known to be illegally associated with or addicted to controlled substances. The complaint further alleged that Flosi's conduct was "cause" for discharge from employment under section 10—2.1—17 of the Board of Fire and Police Commissioners Act (Ill. Rev. Stat. 1989, ch. 24, par. 10—2.1—17). It also alleged that his conduct was a violation of a provision of the City of Rock Falls police department manual which provides that an employee should not engage in conduct which impedes the department's efforts to achieve its goals or brings discredit upon the department.

At the hearing before the Board on the mayor's complaint, Illinois State Police Lieutenant Dave Reed testified that on March 24, 1987, Flosi told him that he was cultivating Doyle as a confidential source. At that time, Reed informed Flosi that Doyle had been arrested for a Class X drug offense. Prior to their conversation, Reed did not know that Flosi was intending to use Doyle as a confidential source.

Lieutenant Reed further testified that Doyle had a reputation in the community for using and selling cocaine. He also noted that she lived with Gary Stevens, who was known to sell cocaine.

According to Lieutenant Reed, police executed a search warrant at Doyle's residence on March 23, 1987, discovering cocaine and drug paraphernalia. In September of 1987, Reed saw Flosi and Doyle together at a restaurant. Reed stated that his department would never deal with informants in public. He also noted that his department became reluctant to share information with the Rock Falls police department because of Flosi's relationship with Doyle.

Whiteside County Sheriff Lester Kimmel testified that Doyle had an extensive criminal history involving drug offenses and retail theft. He further testified that she had a reputation for being involved with narcotics. Kimmel noted that the telephone log from the county jail showed that Doyle called Flosi on March 24, 1987, while she was incarcerated at the jail.

According to Kimmel, during the last week of March he had a meeting with the Whiteside County State's Attorney, the Rock Falls chief of police, and Lieutenant Reed. At that meeting, Kimmel told the Rock Falls chief of police that he believed Flosi had breached standards of good police conduct with regard to his relationship with Doyle. Kimmel also told him that it was extremely difficult to have confidence in the Rock Falls police department while Flosi was carrying on a close relationship with a known substance abuser.

Whiteside County Sheriff's Department Sergeant Dennis Schantz testified that he arrested Doyle on March 23, 1987, at a Rock Falls tavern and then transported her to the Rock Falls police department. As they pulled into the parking lot of the station, Flosi met them. According to Schantz, when Doyle exited the squad car she began to cry and Flosi put his arm around her shoulder and told her everything would be alright. Shantz also stated that Flosi had told her that he knew this would happen.

Schantz further testified that Flosi took Doyle into his office where they remained for more than two hours. There, they sat side by side at a desk very close to each other. During that time, they each took turns using the phone, and at one point, Flosi was looking through a phone book. Schantz opined that Flosi had not handled the situation like a normal arrest. He explained that normally an arrestee is placed in a holding cell. He noted that he had suggested to Flosi that he place Doyle in a holding cell and Flosi responded that she was okay and was not going anywhere.

Rock Falls police officer Wesley Stern testified that Doyle was known as "snow queen" in the community. According to Stern, he and Officer Schantz arrested Doyle on March 23, 1987. On the evening of her arrest, Flosi walked down a hallway at the police station with his arm around her back. Schantz intended to put Doyle in a jail cell, but Flosi told him that it was not necessary. Instead, Flosi and Doyle went into an interrogation room and talked. Doyle sat next to Flosi and put her head on his leg. Sometime later, Flosi took Doyle into his office where the two talked further. Stern noted that he was upset about the way Flosi was handling the situation. He also noted that he had not seen anything like it before.

Theresa Siedal, a Rock Falls police dispatcher, testified that during her shift from March 23, 1987, through September 23, 1987, Flosi received about 30 phone calls a week from Doyle. She estimated that the phone conversations generally lasted between 10 and 30 minutes.

Steven Flosi testified that he had been a Rock Falls police officer since 1968. He was eventually promoted to the rank of assistant chief of police. On October 7, 1987, Mayor James Arduini appointed Flosi acting chief of police when the former acting chief retired.

Flosi further testified that his first contact with Doyle in 1987 occurred on March 16. Prior to that time, he had not seen her since 1983. On the evening of March 23, 1987, he made a routine check at the police department. At that time, he discovered that a warrant was being executed at Doyle's residence. When Doyle arrived at the police station following her arrest, Flosi read her the *Miranda* warnings and

noted that she was intoxicated. They then sat next to each other at a conference table, and Doyle put her head on the table. After Flosi learned that a safe had been found at Doyle's residence, he attempted to convince her to reveal the combination. He was successful and eventually the safe was opened.

Flosi also testified that during the course of their conversation, Doyle told him that Stevens operated a drug business at their residence. Upon hearing that, he decided that Doyle could be used as an informant if he properly cultivated a relationship with her. He stated that he had developed informants the same way he did Doyle on numerous occasions in the past. The method he used was to befriend a female informant suffering from psychological problems. In the process, he would attempt to gain information leading to the arrest of other suspects. Flosi identified numerous specific instances in which he had successfully used this method. Flosi noted that Doyle had sent him flowers on three occasions and had called him often at the police station. He explained that this showed that his efforts had been effective.

Flosi stated that sometime after March 23, 1987, he had a conversation with his supervisor, the Rock Falls chief of police, regarding the use of Doyle as an informant. As a result of that conversation, the police chief asked him to make written reports about his contacts with Doyle to advise the chief of what was happening. Flosi further stated that before May 1, 1987, there was no written policy establishing any procedure for dealing with informants. He also stated that he had not received any oral or written reprimand or complaint about his relationship with Doyle.

James Scacia, special agent for the Federal Bureau of Investigation, testified that he had worked with Flosi on various cases and that he trusted him. He further testified that "befriending" was a common method of cultivating an informant.

Carl Sommers testified that he was employed by the City of Rock Falls as chief of police from 1969 until his retirement in 1986. Sommers described Flosi's work as exemplary, very good, and outstanding. He stated that Flosi's loyalty to the department was never in question. He could not recall ever having to discipline Flosi. He further stated that he trusted Flosi's ability to handle informants and never placed any limitations on him in that area.

Based on the foregoing evidence, the Board discharged Flosi from his position as a police officer. In so doing, the Board found, *inter alia*, that Flosi's contacts with Doyle were not for valid law enforcement reasons.

On appeal, Flosi initially argues that the Board's findings were against the manifest weight of the evidence.

As a preliminary matter, we note that the defendant, James Arduini, has filed a motion to dismiss Flosi's appeal which we have taken with the case. The defendant contends that the record on appeal is inadequate and that Flosi failed to include a list of exhibits in his brief. We find, however, that the record and briefs are adequate to resolve the issue presented on appeal. Accordingly, we deny the defendant's motion to dismiss the appeal.

■ Turning to the merits, we note that it is well settled that the scope of judicial inquiry of factual determinations made by an administrative agency is limited to determining whether the agency's decision was contrary to the manifest weight of the evidence. (*Walsh v. Board of Fire & Police Commissioners* (1983), 96 Ill. 2d 101, 449 N.E.2d 115; *Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371.) While an agency's findings are considered *prima facie* true and correct, they must be based upon facts established by competent evidence. (*Savaglio v. Board of Fire & Police Commissioners* (1984), 125 Ill. App. 3d 391, 465 N.E.2d 1065.) If the record does not disclose evidence supporting the agency's determination, a reviewing court must not hesitate to grant relief. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 307 N.E.2d 371; *Shallow v. Police Board* (1981), 95 Ill. App. 3d 901, 420 N.E.2d 618.) In examining the record, the reviewing court must look at all evidence in opposition to the challenged finding as well as evidence which tends to support it. *Shallow v. Police Board* (1981), 95 Ill. App. 3d 901, 420 N.E.2d 618.

■ After carefully scrutinizing the record in the instant case, we find that the Board's decision to discharge Flosi was contrary to the manifest weight of the evidence. The circumstantial evidence presented fell short of proving wrongdoing on Flosi's part. In particular, we find that the Board erroneously concluded that Flosi was not cultivating Doyle as an informant. The evidence did not establish that anything Flosi did regarding Doyle was illegal, immoral, or contrary to the established procedure of the Rock Falls police department. In so finding, we note that the whole area of how to properly deal with an informant is problematic and the record shows that the Rock Falls police department gave its officers considerable leeway in that area.

The Board cites *DeGrazio v. Civil Service Comm'n* (1964), 31 Ill. 2d 482, 202 N.E.2d 522, for the proposition that a police officer's relationship with a person of ill-repute constitutes "cause" for discharge. In *DeGrazio*, the Illinois Supreme Court held that the discharge of a police lieutenant was proper based on the lieutenant's trip

to Europe with an underworld figure. In *DeGrazio* the police lieutenant had accompanied Anthony Accardo on a trip to Europe and the Illinois Supreme Court said "[i]t does not require an expert opinion to establish that the plaintiff's trip with a person of Accardo's reputation would reflect adversely on the police department and subject it to disgrace and ridicule." (31 Ill. 2d at 489.) We are of the opinion that *DeGrazio* is distinguishable on its facts from the case at bar. In *DeGrazio* there was no suggestion of any valid police purpose in the trip that the officer made with Mr. Accardo. In the instant case, Flosi's testimony that he was cultivating Doyle as an informant is unrebutted, and it is clear that superiors of Flosi were aware of the conduct and did nothing about it from March 24, 1987, until November 12, 1987. It is also clear that during the time between initial contact by Flosi with Doyle and the time that a complaint was filed herein, the mayor appointed Flosi acting chief of the department, certainly a position of great trust and confidence.

We also find that nothing presented at the hearing was inconsistent with Flosi's contention that he was cultivating Doyle as an informant. Flosi testified that he had often befriended female suspects for the purpose of cultivating them as informants. He also gave several examples of how his past efforts had led to the arrest of other persons suspected of committing serious crimes. The fact that Flosi received numerous phone calls and on three occasions flowers from Doyle could be viewed as merely establishing that he had succeeded in cultivating an informant relationship with her.

We further note that Flosi had an unblemished record serving as a police officer for over 19 years without any incidents of discipline. The former chief of police described Flosi's work as exemplary and noted that he had never placed any limitations on him in dealing with informants. It was undisputed that Flosi was never instructed as to how to deal with informants. Moreover, it was also undisputed that he was never reprimanded or instructed to change his relationship with Doyle, despite his filing regular, detailed reports describing his relationship with her. It appears that the first hint of disapproval of Flosi's behavior by the City of Rock Falls did not occur until the mayor filed the instant complaint, which occurred only 35 days after the mayor had appointed Flosi acting chief of police. There is no indication in the record that Flosi was ever informed by his superiors that his conduct was inappropriate. We do not mean to say that a police officer has to have a verbal or written warning prior to disciplinary action being taken against him. However, on the facts of this case where superiors knew about the conduct for over 6½ months prior to

filing a complaint, and where they told Flosi to write reports about his activities, it seems that they acquiesced in and approved of his activities at that time. We also note that following the conduct alleged in the complaint, Flosi was promoted from acting assistant police chief to acting police chief. What events transpired to trigger the filing of the complaint on November 12 is unclear from the record. However, the record is abundantly clear that up until the filing of the complaint, Flosi's conduct was being approved by his superiors. In our view, those responsible for Flosi's police work acquiesced in and approved of his relationship with Doyle. Under the circumstances, we find that the Board's decision discharging Flosi was against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Whiteside County is hereby reversed and the Board of Fire and Police Commissioners of the City of Rock Falls, Illinois, and James Arduini, mayor of the City of Rock Falls, or his successor, are hereby ordered to reinstate Steven Flosi as a police officer for the City of Rock Falls police department at the rank that he held prior to being appointed as acting chief and, further, that Steven Flosi receive back pay since the time of his discharge and removal from the payroll of the City of Rock Falls.

Reversed.

SLATER and STOUDER, JJ., concur.