723 N.E.2d 731 (1999)
309 Ill. App.3d 924
243 Ill.Dec. 428
CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, a body politic and corporate, Plaintiff-Appellant, Counter defendant-Appellee,
v.
Beverly MARTIN, Defendant-Appellee, Counter plaintiff-Appellant (Gale Community Academy Local School Council, a legal entity, Defendant, Counter defendant-Appellee).
Nos. 1-98-3320, 1-98-3610.
Appellate Court of Illinois, First District, Fifth Division.
December 17, 1999.
*733 Tressler, Soderstrom, Maloney & Priess, Chicago (Steven M. Laduzinsky and Michael J. Cronin, of counsel), for Appellee.
Kinoy, Taren, Geraghty & Potter, Chicago (James R. Potter, of counsel), for Appellee.
Martin, Brown & Sullivan, Ltd., Chicago (William K. Kane, of counsel), for Gale Community Academy.
Justice HARTMAN delivered the opinion of the court:
Gale Community Academy Local School Council (Gale LSC) voted to appoint Beverly Martin as the new principal of Gale Community Academy (Gale School) and presented her with a four-year performance contract for that position, which she signed. The Chicago School Reform Board of Trustees (Board), however, refused to ratify the contract and brought *734 suit for a declaratory judgment that the contract was void as violative of the School Code (105 ILCS 5/1-1 et seq. (West 1996)). Martin counterclaimed for breach of contract and also moved to dismiss the Board's complaint, which the circuit court granted. Martin then petitioned for a rule to show cause, seeking specific performance of her contract, an injunction against Gale LSC from conducting another principal selection process and money damages. The court denied Martin's petition and transferred her counterclaim for money damages to the law division. The Board appeals the court's dismissal of its complaint for declaratory judgment, claiming that the court erred in finding that Martin's four-year performance contract as principal was issued in conformance with the School Code. Martin appeals the court's denial of her petition, claiming that the court should have issued an injunction (1) ordering the Board and Gale LSC immediately to instate her as principal of Gale School and to pay her monetary damages and (2) enjoining Gale LSC from commencing any new principal selection process.
The record reveals that, on January 6, 1997, the principal of Gale School, a pre-kindergarten to eighth grade Chicago public school, resigned. On the same date, the Board appointed Guadalupe Shields as interim principal. Thereafter, Gale LSC formed a principal selection committee in order to appoint a permanent principal.[1] Gale LSC consisted of 11 voting members, including its interim principal, two of its teachers, six parents of students enrolled at Gale School and two community residents.[2]
As part of the principal selection process, Gale LSC convened a special meeting for the purpose of principal selection. Gale LSC prepared notices of the upcoming meeting, advising the public of the date, time, location and purpose of the meeting. Three different notices of the special meeting were prepared and given to interim principal Shields to post in the school. One notice did not list "principal selection" as a topic, although the other two did.
On April 21, 1997, during the special meeting, seven members of Gale LSC voted to award Martin the principal contract. Two members of Gale LSC voted against Martin and one member abstained. As a result of the seven to two vote, Gale LSC presented Martin with a four-year contract, which she and the seven members of Gale LSC signed.[3] Two members of Gale LSC, including its chairperson, refused to sign the contract. The Board was then notified of certain objections to the meeting, including the propriety of the notice of the meeting and the legitimacy of the selection process itself.
Thereafter, the Board's Law Department issued an opinion letter to Gale LSC informing it that the April 21, 1997 meeting did not conform to the School Code. Specifically, the Board's letter claimed *735 that, of the three notices received by interim principal Shields, she posted the notice (which listed principal selection as an agenda item) not authorized or issued by either the chairperson or four members of Gale LSC.[4] The Board therefore asserted that all actions taken by Gale LSC at the special meeting, including the selection of a principal, were "void." The Board then suggested that "the only manner in which the Gale LSC can remedy the notice deficiency * * * is by reconvening a council meeting pursuant to proper notice containing a complete agenda of anticipated actions and taking the necessary affirmative votes for any official action."
Attempting to comply with the Board's demand, Gale LSC posted notices for several special meetings to be held May 12, May 27, June 2, June 16 and June 19, 1997, in which principal selection was listed as an agenda item. Those notices conformed to the School Code's requirements. On June 19, 1997, Gale LSC reviewed three candidates, including Martin, for principal. Martin received six affirmative votes; the other two candidates received two votes and one vote, respectively.
On June 20, 1997, Gale LSC then sent the names of the three candidates, in order of preference, to Chicago Board of Education CEO Paul Vallas.[5] On July 25, 1997, Vallas responded, advising Gale LSC that since he had "not made a selection from the list of principal candidates * * * within the required 30 day period[,] the Gale Local School Council is free to select a candidate from the three names or may decide to begin a new principal selection process."
Three days later, at a July 28, 1997 special meeting, Gale LSC voted for a new principal; Martin again garnered six affirmative votes. Gale LSC then presented Martin with the same four-year contract as previously offered, which she signed.
On August 27, 1997, the Board announced that it was "not going to take an action on the [Gale School's] principal's contract." Instead, the Board expressed its "belief that "there is enough of a gap" in the School Code to warrant a ruling by the circuit court. The Board then promised to "abide by the decision of the court."
As announced, the Board filed its complaint in the circuit court against Martin and Gale LSC, seeking a declaration from the circuit court that neither contract with Martin was valid. The Board was given leave to amend its complaint and in its third amended complaint alleged, inter alia, that Gale LSC's selection of Martin at the April 21, 1997 meeting was violative of the School Code because it did not occur within 90 days of the resignation of the previous principal.[6] The Board also alleged that Gale LSC's selection of Martin at the July 28, 1997 meeting was "null and void" because she received only six votes and not a "supermajority" of seven votes. The Board further alleged that Gale LSC failed to submit the three candidates' names to Vallas within 90 days and, therefore, its subsequent selection of Martin *736 was invalid.[7]
Martin answered the Board's complaint, claiming that Gale LSC's selection of her conformed to statute and, therefore, her contract was valid. Martin also counterclaimed, alleging breach of contract; seeking declaration that her four-year contract with the Board was valid and an award of money damages in excess of $30,000 for the breach; and such other, further or different relief as may be just, proper and equitable.
Martin also moved, pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 1996)) (section 2-619), to dismiss the Board's complaint, which the circuit court granted, finding that the April 21, 1997 meeting conformed to the dictates of the School Code and the Open Meetings Act and, therefore, the direct selection of Martin at that meeting was valid.[8] The Board appeals from the court's dismissal of its third amended complaint.
Shortly thereafter, Martin filed her "Verified Petition for Rule to Show Cause Why Orders For Instatement and Other Relief Should Not Issue." In her petition, Martin requested that the circuit court enter orders directing that (1) the Board and Gale LSC immediately instate her as principal of Gale School; (2) Gale LSC be enjoined from commencing any new principal selection process; and (3) the Board and Gale LSC pay her as back pay the difference between her current salary and the salary she would have been paid as Gale School's principal.
The circuit court denied Martin's requested relief, instead transferring her counterclaim for money damages to the law division. Martin appeals from the court's denial of her petition.[9]

I
The Board contends the circuit court erred in dismissing its complaint, because Gale LSC failed to comply with the School Code or the Open Meetings Act in selecting Martin as principal; therefore, Martin's 4-year performance contract is void. The Board raises three separate challenges to Martin's contract: first, Gale LSC lacked the power to select its own principal more than 90 days after the previous principal resigned and therefore the vote on April 21, 1997, occurring more than 90 days after the January 6, 1997 resignation of the previous principal, was void; next, the posted notice of the April 21, 1997 meeting did not contain "principal selection" as an agenda item (allegedly violative of the Open Meetings Act) and therefore any principal vote at that meeting was void; finally, Gale LSC failed to select Martin by a "supermajority" of seven votes at the July 28, 1997 meeting and therefore did not have the power to directly select Martin as principal on that date.
The dismissal of a complaint pursuant to section 2-619 is subject to de novo review. Mostafa v. City of Hickory Hills, 287 Ill.App.3d 160, 165, 222 Ill.Dec. 513, 677 N.E.2d 1312 (1997). A section 2-619 motion to dismiss admits all well-pleaded facts in a complaint, but does not admit conclusions of law or unsupported conclusions *737 of fact. Mostafa, 287 Ill.App.3d at 165, 222 Ill.Dec. 513, 677 N.E.2d 1312. If, in construing all supporting documents submitted in the light most favorable to the nonmoving party, there exist no disputed issues of fact, the motion should be granted. 735 ILCS 5/2-619 (West 1996); Jackson v. Moreno, 278 Ill.App.3d 503, 215 Ill.Dec.277, 663 N.E.2d 27 (1996).
The claim that Gale LSC lacked the power to select a principal more than 90 days after the previous principal's resignation is made by the Board in reliance upon section 34-2.3 of the School Code, which provides, in relevant part:
"direct selection by the local school council of a new principal to fill a vacancy under a 4 year performance contract shall be made within 90 days after the date such vacancy occurs." 105 ILCS 5/34-2.3 (West 1996).
The Board therefore asserts that the April 21, 1997 direct selection of Martin with seven affirmative votes violated the School Code because this selection did not occur within 90 days of the previous principal's resignation.
Martin responds that the Board has waived any objection to the April 21, 1997 vote, claiming that the Board did not initially raise the 90-day time limitation, but instead advised Gale LSC that the only defect in its April 21, 1997 meeting had to do with the notice of the meeting. Alternatively, Martin counters that the 90-day time limitation is directory and not mandatory and therefore Gale LSC's vote on April 21, 1997, was valid.
Waiver aside, the School Code provides that direct selection of a principal by a local school council "shall be made within 90 days after the date such vacancy occurs." 105 ILCS 5/34-2.3 (West 1996). Nevertheless the School Code does not indicate the sanctions to be imposed nor the procedures to be used should a local school council fail to select a principal within 90 days.
The Board interprets the language of the School Code as imposing a mandatory 90-day time limit to the council's powers to directly select a principal.[10] In support of a mandatory construction, the Board posits that when a local school council fails to select a principal within 90 days of the resignation of the previous principal, the "interim" principal's term is "extended" for a term not to exceed 100 school days. Only after this 100 school days expires is the local school council again vested with the power to begin a new principal selection process. There is no authority for this proposition.
In suggesting that the "interim" principal's term must extend for 100 school days if the local school council fails to select a principal within 90 days of the resignation, the Board relies upon section 34-8.1 of the School Code (105 ILCS 5/34-8.1 (West 1996)). This section, entitled "Principals," lists the powers, duties and responsibilities of principals and further states that "[i]f a principal is absent due to extended illness or leave or absence, an assistant principal may be assigned as acting principal for a period not to exceed 100 school days." (Emphasis added.) 105 ILCS 5/34-8.1 (West 1996). The Board insists that this section therefore confers upon the interim principal the power to maintain the office for 100 school days should a council not timely select a four-year principal. This section also states, "[w]henever a vacancy in the office of a principal occurs for any reason, the vacancy shall be filled by the selection of a new principal to serve under a 4 year performance contract in the manner provided by Section 34-2.3." (Emphasis added.) 105 ILCS 5/34-8.1 (West 1996).
*738 Martin's countervailing argument is that the 90-day limitation is directory and; therefore, Gale LSC's failure to select its principal within the 90-day period following the vacancy does not defeat the validity of its vote. She also posits that if the power to select a principal is wrested from the local school council once the 90-day term runs, the School Code offers no other means by which a permanent principal will be selected. She contends, therefore, that the language"direct selection * * * shall be made within 90 days after the date such vacancy occurs"must be read as directory and not mandatory. (Emphasis added.) See 105 ILCS 5/34-2.3 (West 1996).
The word "shall" appearing in a statute may be interpreted to mean "must" or "may," depending on the context and intent of the legislature. Village of Park Forest v. Fagan, 64 Ill.2d 264, 268, 1 Ill. Dec. 59, 356 N.E.2d 59 (1976). Statutory construction requires courts to ascertain and give effect to the intent of the legislature. Fumarolo v. Chicago Board of Education, 142 Ill.2d 54, 96, 153 Ill.Dec. 177, 566 N.E.2d 1283 (1990) (Fumarolo). In construing statutory provisions as being mandatory or directory, the word "shall" is regarded as indicative of a mandatory legislative intent. Fumarolo, 142 Ill.2d at 96. 153 Ill.Dec. 177, 566 N.E.2d 1283. Nevertheless, although "shall" ordinarily indicates a mandatory legislative intent, it may be construed as permissive or directive, depending on the context and particularly where no sanctions are provided for failure to comply with a requirement. Peoples Independent Party v. Petroff, 191 Ill. App.3d 706, 708, 138 Ill.Dec. 915, 548 N.E.2d 145 (1989).
Legislative intent must be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from different constructions. Fumarolo, 142 Ill.2d at 96, 153 Ill.Dec. 177, 566 N.E.2d 1283. Here, the language of section 34-2.3 clearly evinces a directory construction. There is nothing in the context of the statute which suggests that the Legislature intended that the local school council's clear authority to select their own principals be relegated or transferred to the Board in the event that a local school council is unable to elect a principal within 90 days. Furthermore, consideration of the entire School Code, its nature and object, supports the conclusion that the legislature intended that the language of section 34-2.3 be directory.
Although the Board of Education retains many general administrative powers and responsibilities, under the School Code they have been substantially altered, consistent with the expressed intent of the Legislature to place an increased authority for individual school decisions at the individual school level. Fumarolo, 142 Ill.2d at 63, 153 Ill.Dec. 177, 566 N.E.2d 1283. In amending the School Code, the Legislature therefore intended to give greater authority at the local school level and to remove much of the centralized authority. Fumarolo, 142 Ill.2d at 96, 153 Ill.Dec. 177, 566 N.E.2d 1283. In particular, much of the power vested in local school councils centers upon selection of their own principals. Fumarolo, 142 Ill.2d at 63-64, 153 Ill.Dec. 177, 566 N.E.2d 1283.
For this reason it is untenable to read a mandatory time limitation into the School Code. As is evident, such a result would run counter to the purpose and express language of the School Code conferring upon local school councils the power to select their own principals. This is not to say that the 90-day period is of no import; its significance centers upon a council's responsibility to ensure a timely and smooth transition between principals. Nevertheless, a council's failure to appoint its principal before expiration of the 90-day period should not divest the council of its powers to elect its own principal.
The Board next claims that Gale LSC's April 21, 1997 selection of Martin violated the School Code and the Open Meetings Act (5 ILCS 120/1 et seq. (West 1996)) because the notice posted for that *739 meeting did not list "principal selection" as an agenda item.[11] Martin counters that facts judicially admitted by the Board establish that the posted agenda did indeed list principal selection as a topic. Alternatively, Martin claims that the Board's challenge pursuant to the Open Meetings Act is time-barred by the Act itself.
Section 120/2.02(a) of the Open Meetings Act provides that
"[p]ublic notice of any special meeting * * * shall be given at least 48 hours before such meeting, which notice shall also include the agenda for the special * * * meeting, but the validity of any action taken by the public body which is germane to a subject on the agenda shall not be affected by other errors or omissions in the agenda." 5 ILCS 120/2.02(a) (West 1996).
In the event of non-compliance with the Open Meetings Act, the Act grants that
"any person * * * may bring a civil action in the circuit court for the judicial circuit in which the alleged noncompliance has occurred or is about to occur * * * prior to or within 60 days of the meeting alleged to be in violation of this Act * * *." 5 ILCS 120/3(a) (West 1996).
Section 120/3 also authorizes the court to grant any relief "as it deems appropriate, including * * * declaring null and void any final action taken at a closed meeting in violation of this Act." (Emphasis added.) 5 ILCS 120/3(c) (West 1996).
In the instant case, the dispute centers upon which of the three prepared "notices" was actually posted. Conflicting evidence as to this question was presented. Interim principal Shields testified in her evidence deposition that she received three different notices for the April 21, 1997 special meeting. The first notice did not list "principal selection" as an agenda item. A second and third notice received by Shields did list "principal selection" as an agenda item. Interim principal Shields claimed, however, that she only posted the first notice.
Deposition testimony from Gale LSC members Wayne Frazier and Dennis Weekly established, however, that two of the notices were posted at the school, at least one of which listed "principal selection" as an agenda item. Moreover, the May 7, 1997 letter from the Board's Law Department to Gale LSC clearly stated that the notice posted included four items, including "principal selection." Although this letter asserted that the posted notice was improper because it was not prepared by either the council's chairperson or four members, the Board has since abandoned this claim and now asserts that a different notice was posted, one which did not contain "principal selection" as an agenda item.
Pointing to this obvious change in tactics, Martin asserts that the Board is bound by its "judicial admission" contained in the May 7, 1997 letter. Martin therefore contends that the Board cannot now claim a disputed issue of fact. The Board nevertheless insists that the May 7, 1997 letter, which it appended to its third amended complaint, is not a judicial admission because its complaint was not verified. See Bartsch v. Gordon N. Plumb, Inc., 138 Ill.App.3d 188, 197, 92 Ill.Dec. 862, 485 N.E.2d 1105 (1985) ("[a]dmissions in unverified pleadings, however, are considered admissions against interest, which are not conclusive against the pleader and may be explained or contradicted").
In any event, it is immaterial whether an issue of fact remains as to this question because, as Martin correctly asserts, the Board is barred from asserting a violation of the Open Meetings Act due to its failure to bring a complaint based on this violation within 60 days. As the Open Meetings Act makes clear, any person may bring a civil action alleging noncompliance with the Act "prior to or within 60 days of the meeting alleged to be in violation of this Act." 5 *740 ILCS 120/3(a) (West 1996). In addressing this time limitation, the court in Paxson v. Board of Education, 276 Ill.App.3d 912, 923-24, 213 Ill.Dec. 288, 658 N.E.2d 1309 (1995) stated:
"one of the remedies for a violation of the Act is the nullification of any action taken at the meeting. (5 ILCS 120/3(c) (West 1992).) The voidance of governmental actions is indeed a powerful and drastic remedy that carries with it the enormous potential for upsetting the stability of government. Consequently, we find that the restriction placed on the remedy is more than reasonable."
Clearly then, the Board failed to file a timely complaint of Gale LSC's alleged violation. Accordingly, the Board cannot now argue nullification of Gale LSC's actions taken at the April 21, 1997 meeting.
Nevertheless, the Board asserts that it detrimentally relied upon Gale LSC's actions. In holding further meetings, however, Gale LSC merely was attempting a good-faith effort to comply with the Board's dictate that the April 21, 1997 meeting was improper. Likewise, Gale LSC's actions did not evince its acknowledgment that its April 21, 1997 meeting was improper.
Moreover, even if the Board was not barred from asserting a violation of the Open Meetings Act, its requested remedynullification of Gale LSC's actions at the meetingis too extreme and not supported by the Open Meetings Act. The Open Meetings Act permits a court to grant any relief "as it deems appropriate, including * * * declaring null and void any final action taken at a closed meeting in violation of this Act." (Emphasis added.) 5 ILCS 120/3(c) (West 1996); Williamson v. Doyle, 112 Ill.App.3d 293, 300, 67 Ill.Dec. 905, 445 N.E.2d 385 (1983) ("The statute permitting the court to declare the action void refers by its terms only to a `closed session.'"). Significantly here, the principal selection occurred at an open meeting attended by all members of Gale LSC (excluding the interim principal). The Board's claim fails.
Finally, the Board argues that Martin's contract is invalid because the July 28, 1997 selection of Martin (which occurred after Vallas failed within 30 days to choose a principal from the candidate list submitted by Gale LSC) did not result from a "supermajority" of seven votes. Martin counters that the School Code authorizes a local school council to appoint a principal by a simple majority vote after the Board's superintendent fails to choose from the submitted list of candidates.
Clearly, the School Code authorizes a local school council to select its own principal directly with seven affirmative votes: "7 affirmative votes of the local school council shall be required for the direct selection by the local school councilwithout the prior submission of a list of candidates to the general superintendent for the position of principalof a new principal." 105 ILCS 5/34-2.2(c) (West 1996). In the event that a local school council is unable to select a principal directly, the School Code requires a local school council to submit a list of three candidates to the general superintendent for his or her choosing: "the local school council in such event shall submit to the general superintendent a list of 3 candidateslisted in the local school council's order of preferencefor the position of principal, one of which shall be selected by the general superintendent." 105 ILCS 5/34-2.3 (West 1996). If a superintendent fails or refuses to select one of the candidates within 30 days, the School Code mandates that the local school council select one of the candidates: "the local school council within 15 days after such failure or refusal shall itself select one of the candidates from the list as principal." 105 ILCS 5/34-2.3 (West 1996).
There is no dispute in the instant case that the above procedure was followed. Complying with the Board's own request, Gale LSC voted on June 19, 1997, by six affirmative votes, to select Martin as principal; *741 two other candidates received two votes and one vote, respectively. The three candidates' names then were submitted to Vallas, who did not, within 30 days, choose a principal from this list and advised Gale LSC that it "was free to select a candidate from the three names." Three days later, Gale LSC selected Martin with six votes, a majority (out of the eleven voting members) but not a "supermajority" of seven. The only dispute, therefore, concerns whether Gale needed a simple majority (six votes) or a "supermajority" (seven votes) to select its own candidate after Vallas failed to select one himself.
A review of the School Code leads to the conclusion that a simple majority is all that is needed for a local school council to elect its principal after the superintendent fails to choose from a candidate list. Section 34-2.2(c) of the School Code provides in full:
"(c) A majority of the full membership of the local school council shall constitute a quorum, and whenever a vote is taken on any measure before the local school council, a quorum being present, the affirmative vote of a majority of the votes of the full membership then serving of the local school council shall determine the outcome thereof; provided that whenever the measure before the local school council is (i) the evaluation of the principal, or (ii) the renewal of his or her performance contract or the inclusion of any provision or modification of the contract, or (iii) the direct selection by the local school council of a new principal (including a new principal to fill a vacancy) to serve under a 4 year performance contract, or (iv) the determination of the names of candidates to be submitted to the general superintendent for the position of principal, or (v) the selection of a principal in cases of the general superintendent's failure or refusal to make the selection after a list or lists of candidates for the position of principal have been submitted by the local school council to the general superintendent as provided in Section 34-2.3, the principal and student member of a high school council shall not be counted for purposes of determining whether a quorum is present to act on the measure and shall have no vote thereon: and provided further that 7 affirmative votes of the local school council shall be required for the direct selection by the local school councilwithout the prior submission of a list of candidates to the general superintendent for the position of principal as provided in Section 34-2.3of a new principal (including a new principal to fill a vacancy) to serve under a 4 year performance contract but not for the renewal of a principal's performance contract." 105 ILCS 5/34-2.2(c) (West 1996).
Section 34-2.2(c) therefore provides that "a majority of the votes of the full membership" (including the current principal and student member of the council) shall determine the outcome "on any measure" except those instances involving selection or evaluation of the principal, in which case "the principal and student member of a high school council shall not be counted for purposes of determining whether a quorum is present to act on the measure and shall have no vote thereon." Section 34-2.2(c) does not, however, impose a supermajority voting requirement in all instances involving principal selection or review. On the contrary, this section only restricts a principal or a student member from voting on issues relating to the selection or review of principals. Moreover, this section limits its "supermajority" voting requirement to a single instance: the direct selection by a local school council of a principal "without the prior submission of a list of candidates to the general superintendent."
In other words, only in the case of a direct selection of a principal by a local school council (without prior submission to the superintendent) is a supermajority required. In all other cases involving principal selection and review, a majority of the *742 council votes (excluding the principal and student member) shall be sufficient. In all other matters before a local school council not involving principal selection or review, a majority of votes when a quorum is present shall be determinative.
Notwithstanding the language of section 34-2.2(c), the Board insists that Gale LSC was required to select Martin by seven affirmative votes, even after Vallas did not select a principal from Gale LSC's submission of candidates. Such a reading is illogicalif a local school council is unable to select a principal directly with seven affirmative votes before submission to the general superintendent, it is unlikely that it would do so immediately after a general superintendent fails or refuses to make his or her selection. Instead, what is more tenable and consistent with the purpose of the School Code, is that after a local school council is unable to select its own principal directly, the general superintendent is afforded the opportunity to select a candidate from the council's choices. If that opportunity is not exercised by the superintendent, the council is then allowed to select its principal by a simple majority. This reading comports with the spirit and purpose of the School Code.
Accordingly, Gale LSC's July 28, 1997 vote in which a majority of the council voted for Martin, was sufficient to select Martin as principal of Gale School. Although the Board also claims that Gale LSC's submission of candidates to Vallas occurred outside the 90-day time limit for presenting names to the general superintendent, its argument fails. It was the Board itself which demanded that Gale LSC conduct another principal selection vote after claiming the first vote did not conform with the Open Meetings Act.

II
Martin, in her appeal before this Court, argues that the circuit court erred in refusing to grant her the injunctive relief requested. She claims that she is entitled to specific performance of her contract, as a "public servant." She also insists that Gale LSC must be enjoined from conducting a new principal selection process. The Board initially questions the jurisdiction of this Court to hear Martin's appeal. On the merits, the Board and Gale LSC claim that Martin has not proven her entitlement to a preliminary injunction or to specific performance of her contract.
Supreme Court Rule 307(a)(1) permits the immediate appeal of interlocutory orders "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." 166 Ill.2d R. 307(a)(1); Desnick v. Department of Professional Regulation, 171 Ill.2d 510, 216 Ill.Dec. 789, 665 N.E.2d 1346 (1996). To the extent that the circuit court refused to enter an injunction compelling the Board to instate Martin immediately as principal, and barring Gale LSC from commencing any new principal selection process, its order is appealable pursuant to Rule 307.
A preliminary injunction should be granted only where the movant has shown that (1) there is no adequate remedy at law and there will be irreparable injury if the injunction is not granted; (2) the threatened injury will be immediate, certain and real if the injunction is denied and the loss or inconvenience to the defendant is comparatively small and insignificant if granted; (3) there is a reasonable likelihood of prevailing on the merits of the case; and (4) there would be no injurious effect upon the general public. Graber v. Badegian, 242 Ill.App.3d 1049, 1053, 183 Ill.Dec. 643, 611 N.E.2d 1291 (1993). The grant of a preliminary injunction is an extraordinary remedy and should be granted with great care. Hayden's Sport Center. Inc. v. Johnson, 109 Ill.App.3d 1140, 1145, 65 Ill.Dec. 612, 441 N.E.2d 927 (1982). The circuit court is vested with discretion in the grant or refusal to grant a preliminary injunction and its determination will not be reversed absent a showing of an abuse of discretion. Butler v. USA Volleyball, 285 Ill.App.3d 578, 582, 220 Ill.Dec. 642, 673 N.E.2d 1063 (1996).
*743 In the instant case, Martin fails to establish her entitlement to the requested relief. Martin's petition sought immediate "instatement" as principal of Gale School and was based upon her counterclaim for breach of contract. Martin errs in her assumption that the circuit court found the Board had breached the contract. The court determined only that Gale LSC had acted in accordance with the School Code in selecting Martin as principal. The issues involving breach were not addressed, but instead transferred to the law division. Accordingly, her claim that she is entitled to specific performance of the contract as a remedy to its breach is not supported by the record.
Martin cannot show irreparable injury and the absence of an adequate remedy at law. Here, by her own admission, Martin, a current employee of the Chicago Board of Education as a "coordinator for the department of physical development and health," was offered other principal positions by the Board, which she rejected. One of those positions, as an interim principal at Terrell School and "assured" of getting a four-year contract, involved a salary only slightly less than the salary of Gale School's principal. Martin admitted that the salaries of other positions offered by the Board (which she rejected) were commensurate with or even may have been higher than that paid at Gale School.
Martin has offered no cases now to support her insistence that specific performance of her contract is mandated or even countenanced by the law. She claims a "public sector" exception to the general interdiction against specific performance as a remedy for breach of personal service contracts. See Chady v. Solomon Schechter Day Schools, 269 Ill.App.3d 31, 35-36, 206 Ill.Dec. 731, 645 N.E.2d 983 (1995) (applying "common law prohibition against specific performance as a remedy for alleged breach of employment contract"). Nevertheless, she offers only cases in which public employees allegedly were terminated improperly from their jobs. See McTigue v. Personnel Board of Chicago, 299 Ill.App.3d 579, 233 Ill.Dec. 492, 701 N.E.2d 135 (1998) (plaintiff sought administrative review after being discharged from his job as an engineering technician); Board of Education of Round Lake Area Schools v. State Board of Education, 292 Ill.App.3d 101, 226 Ill.Dec. 309, 685 N.E.2d 412 (1997) (defendant sought administrative review after plaintiff was reinstated to her teaching position); Flosi v. Board of Fire & Police Commissioners of Rock Falls, 221 Ill.App.3d 858, 163 Ill.Dec. 919, 582 N.E.2d 185 (1991) (plaintiff sought administrative review after being discharged from his position with the police department); Bordelon v. Chicago School Reform Board of Trustees, 8 F.Supp.2d 779 (N.D.Ill.1998) (principal claimed a due process violation when Board "temporarily" transferred him from his principalship to an administrative position).
Martin has offered no compelling reason to enjoin Gale LSC from further principal selection, particularly in light of the rule that injunctive relief will not be granted against public officials with respect to their official acts unless such acts are either outside their authority or unlawful. See Lindsey v. Board of Education, 127 Ill.App.3d 413, 422, 82 Ill.Dec. 365, 468 N.E.2d 1019 (1984). As section 5/34-2.3 of the School Code clearly states, each local school council shall have and exercise the power and duty to "directly select in the manner provided by subsection (c) of Section 34-2.2 a new principal." 105 ILCS 5/34-2.3 (West 1996). Consequently, any act by the Gale LSC to begin anew the principal selection process is both statutorily authorized and lawful. Accordingly, the circuit court did not err in refusing to grant Martin her requested relief.
For the above-stated reasons, the judgment of the circuit court is affirmed.
Affirmed.
THEIS, P.J., and QUINN, J., concur.
NOTES
[1] The principal selection process became heated and contentious. Apparently, several members of Gale LSC were accused of racism, anti-Semitism and of refusing to cooperate with the former principal. Allegations also were raised concerning intimidation of staff, threats of retaliation against staff and civil rights violations. None of these allegations, however, bear upon the issues in the instant case.
[2] Section 34-2.1(a) of the School Code provides that "[e]ach local school council shall consist of the following 11 voting members: the principal of the [school], 2 teachers employed and assigned to perform the majority of their employment duties at the [school], 6 parents of students currently enrolled at the [school] and 2 community residents." 105 ILCS 5/34-2.1(a) (West 1996). Section 34-2.1(a) also provides that, in the case of high schools (grades 9 through 12), the local school council "shall consist of 12 voting membersthe 11 voting members described above and one full-time student member." 105 ILCS 5/34-2.1(a) (West 1996).
[3] The School Code authorizes local school councils to directly select, without approval or authorization by the Board, a principal with seven affirmative votes when a quorum is present. 105 ILCS 5/34-2.2(c) (West 1996).
[4] Section 34-2.2(a) of the School Code provides that "[s]pecial meetings of the local school council may be called by the chairperson or by any 4 members by giving notice thereof in writing, specifying the time, place and purpose of the meeting." 105 ILCS 5/34-2.2(a) (West 1996).
[5] The School Code provides that, in the event that seven affirmative votes are not cast for a single candidate, the local school council is required to submit a list of three candidates, in order of preference, to the general superintendent, who then must select one candidate within 30 days. 105 ILCS 5/34-2.3(2) (West 1996). If the general superintendent fails or refuses to select a candidate, the local school council must select the candidate within 15 days. 105 ILCS 5/34-2.3 (West 1996).
[6] Section 34-2.3 of the School Code provides, in relevant part, that "a direct selection by the local school council of a new principal to fill a vacancy under a 4 year performance contract shall be made within 90 days after the date such vacancy occurs." 105 ILCS 34-2.3 (West 1996).
[7] Section 34-2.3 of the School Code states, in part, that when a "vacancy is not filled by direct selection by the local school council, the candidate list shall be submitted by the local school council to the general superintendent not later than 90 days after the date such removal or vacancy occurs." 105 ILCS 5/34-2.3 (West 1996).
[8] Initially, Gale LSC supported Martin's motion; however, Gale LSC, which no longer contains the same members, reached a settlement with the Board and withdrew its own motion to dismiss. The Board also attempted to voluntarily dismiss its third amended complaint, which the court denied.
[9] Martin filed two notices of appeal. The first purports to appeal from "the final judgment of the Circuit Court," seeking "the reversal of said judgment denying her petition for rule to show cause." Her second notice of appeal, entitled "Notice of Interlocutory Appeal," also seeks reversal of her petition for rule to show cause.
[10] The Board relies on an unpublished federal district court case; that case, however, is not persuasive and offers no guidance for the simple reason that the case did not address the issue of whether such language of the School Code was directory or mandatory. See Lekkas v. Chicago Public Schools, 1997 WL 639055 (N.D.Ill.1997).
[11] The School Code expressly adopts the Open Meetings Act: "[e]ach local school council shall comply with the Open Meetings Act." 105 ILCS 5/34-2.3 (West 1996).